**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

TREGG E. HOWZE and WANDA L. HOWZE,  )
                                    )
           Plaintiffs,  )
                                    )
       v.  )
                                    )
AMERIQUEST MORTGAGE COMPANY,  )
ARGENT MORTGAGE COMPANY, LLC,  )
AMC MORTGAGE SERVICES,  )
INC., HOMEQ SERVICING CORPORATION,  )
and DOES 1-5,  )
                                    )
          Defendants.  )

1:07 CV 0061

Gordon J. Quist
U.S. District Judge

**DEMAND FOR JURY TRIAL**

## COMPLAINT

### INTRODUCTION

1.     Plaintiffs Tregg E. Howze and Wanda L. Howze bring this action against a "subprime" mortgage lender and its affiliate and successor to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, and to recover damages under state law.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 1367 (supplemental jurisdiction), and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here.

### PARTIES

3.     Plaintiffs Tregg E. Howze and Wanda L. Howze own and reside in a home

at 14903 Bringard Drive, Detroit, MI 48205.

4.      Defendant Argent Mortgage Company, LLC ("Argent") is a foreign corporation which maintains offices in and does business in Michigan. Argent is an affiliate of Ameriquest. Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823, or 200 W. Adams, Chicago, IL 60606.

5.      Defendant Argent is engaged in the business of originating "subprime" mortgages.

6.      Defendant Argent makes more than 26 loans per year.

7.      Defendant Argent  is a "creditor" as defined in TILA and Regulation Z.

8.      Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Michigan. Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823, or 200 W. Adams, Chicago, IL 60606.

9.      Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

10.     Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

11.     Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

12.     During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of

2

2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

13.    Defendant AMC  Mortgage Services, Inc., ("AMC") is a foreign corporation which does business in Michigan. It is an affiliate of Ameriquest. Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823, or 200 W. Adams, Chicago, IL 60606.

14.    Defendant AMC Mortgage Services, Inc., services loans originated by Ameriquest Mortgage Company, and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

15.    Defendant HomEq Servicing Corporation ("HomEq") is a New Jersey corporation which does business in Michigan. Its registered agent is SCS-Lawyers Incorporating Service, 601 Abbott Road, East Lansing, MI 48823. It services plaintiffs' loan and, on information and belief, owns it. It claims an interest in such loan, including the right to receive payments thereunder. It is joined as a necessary party.

## FACTS RELATING TO PLAINTIFF

16.    Prior to January. 21, 2005, plaintiffs applied for a mortgage with Argent. The application was processed by the Rolling Meadows, Illinois office of Argent.

17.    Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

18.    The loan was closed on January 21, 2005. Plantiffs asked for a copy of their loan documents and was assured that their loan documents would be mailed to them.

19.    Plaintiffs called for a few weeks requesting to see their loan documents but

3

still never received them.  It was not until August 9th 2006, after a third request plaintiffs were sent some of their loan documents.

      20.    The following are documents relating to the loan.  None were delivered to plaintiffs at the closing.

      a.    A note, Exhibit A;

      b.    A mortgage, Exhibit B;

      c.    A settlement statement, Exhibit C;

      21.    Truth in Lending statement or three-day notice of right to cancel required by the Federal Reserve Board was provided.

      22.    Plaintiffs were later directed to make payments to affiliates of Argent-- Ameriquest and AMC Mortgage Services, Inc., and more recently to HomEq Servicing Corporation.

      23.    On information and belief, HomEq Servicing Corporation  owns plaintiffs' loan.

      24.    In the event HomEq Servicing Corporation does not own plaintiffs' loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## COUNT I- TRUTH IN LENDING ACT

      25.    Plaintiffs incorporate paragraphs 1-23.

      26.    This claim is against all defendants.

## RIGHT TO RESCIND

      27.    Because the transaction was secured by plaintiffs' home, and was not

4

entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

> (a) <u>Consumer's right to rescind.</u>
>
>> **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**
>>
>> **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**
>>
>> **(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.  [15 U.S.C. §1635(f)]**
>>
>> **(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**
>
> (b) <u>Notice of right to rescind.</u> **In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**
>
>> **(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(2) The consumer's right to rescind the transaction.**

**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(4) The effects of rescission, as described in paragraph (d) of this section.**

**(5) The date the rescission period expires. . . .**

**(f) Exempt transactions. The right to rescind does not apply to the following:**

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

## GROUNDS FOR RESCISSION

28.    In connection with the loan, Argent failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23.

29.    Notice of rescission has been given to defendants. Exhibit D;

30.    The loan has not been rescinded.

31.    Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

32.    15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of

plaintiffs and against defendants for:

        a.      A judgment voiding plaintiffs' mortgage, capable of recordation in

the public records, and binding on defendants;

        b.      Statutory damages for the underlying disclosure violation;

        c.      If appropriate, statutory damages for failure to rescind;

        d.      Attorney's fees, litigation expenses and costs; and

        e.      Such other or further relief as the Court deems appropriate.

## COUNT II – MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

33.    Plaintiffs incorporate paragraphs 1–23.  This claim is against Argent.

34.    Argent engaged in fraud, deceit and material misrepresentation, in

violation of MCL §445.1672(b) by charging a notary fee of $300, Exhibit C, line 1106.  This

violates MCL §55.285, which provides:

> **The fee charged by a notary public for performing a notarial act shall not be more than $10.00 for any individual transaction or notarial act.  A notary public shall either conspicuously display a sign or expressly advise a person concerning the fee amount to be charged for a notarial act before the notary public performs the act.  Before the notary public commences to travel in order to perform a notarial act, the notary public and client may agree concerning a separate travel fee to be charged by the notary public for traveling to perform then notarial act.**

35.    Argent engaged in deceit by charging plaintiffs an excessive notary

fee.

7

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against

Ameriquest for:

         a.      A declaratory judgment, MCL §445.1681(1)(a);

         b.      Injunctive relief, MCL §445.1681(1)(b);

         c.      Appropriate damages, MCL §445.1681(1)(c);

         d.      Attorney's fees, litigation expenses and costs of suit; and

         e.      Such other and further relief as the Court deems proper.

Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

Daniel A. Edelman

T:\17256\Pleading\Complaint_Pleading.WPD

8

## VERIFICATION

We, Tregg E. Howze and Wanda L. Howze, declare under penalty of perjury, as provided by 28 U.S.C. §1746, that the above statements are true and correct.

_____

Tregg E. Howze

_____

Wanda L. Howze